## HOLMAN, Executor &c. *vs.* SIMS.

[FINAL SETTLEMENT OF EXECUTOR'S ACCOUNTS.]

1. *Allowance to executor of costs and expenses incurred in unsuccessful suit.* An executor is entitled to a credit, on final settlement of his accounts, for the amount of costs and expenses, including a reasonable attorney's fee, incurred and paid by him in the prosecution of an unsuccessful suit, which he instituted in good faith, and under the advice of an attorney, to whom he made a full and fair statement of all the facts within his knowledge; there being no proof of negligence on his part, or want of diligence in ascertaining the facts.

2. *Allowance of attorney's fee.*— An executor is not authorized to employ an attorney, at a cost of ten dollars, to attend to the prosecution of a suit before a justice of the peace, where the amount in controversy is less than ten dollars, and the suit involves no special circumstances; such, for instance, as the amount of costs involved, without fault on his part, or the importance of the principle as affecting other cases; consequently, he is not entitled to a credit for the payment of such attorney's fee.

3. *Compensation for extraordinary services.*—An executor's ordinary attendance on a pending suit, instituted by himself, does not belong to the class of "extraordinary services," (Code, § 1825,) for which he may be allowed special compensation.

4. *Conclusiveness of annual or partial settlements.*—Annual or partial settlements of an executor's accounts, made under the act of 1850, (Session Acts, 1849–50, p. 32, § 28,) are only *prima facie* correct, and not conclusive on final settlement.

APPEAL from the Probate Court of Cherokee.

IN the matter of the estate of James Sims, deceased, on final settlement of the accounts and vouchers of John C. Holman, the executor. The widow of the testator, Mrs. Nancy Sims, contested several of the items on the credit side of the account, as stated by the executor. These items consisted of the costs and expenses incurred and paid by him in two unsuccessful suits, which he had instituted as executor, including an attorney's fee in each case. One of these suits was an action of detinue, which he had instituted against Mary T. Sims, who was a daughter of the

testator, to recover a slave, which she claimed under a gift from the testator. The other was an action brought before a justice of the peace, to recover a balance of $6 55 due on a promissory note payable to the testator. The amount of costs paid in the detinue suit was $95 34, besides an attorney's fee of $45 ; and the costs paid in the other case amounted to $6 50, besides an attorney's fee of $10. The executor also claimed a credit of $22 50, the amount of tavern-bills &c. paid by him while on attendance in the circuit court; and $4, for two days' services in attending to the case before the justice. The executor had been allowed a credit for some of these items, on an annual or partial settlement, in July, 1859 ; but, on the final settlement, which was had on the 20th January, 1862, the court sustained the contestant's objections to all these vouchers, and refused to allow the executor credit for any of them. The material portions of the evidence relating to these items are stated in the opinion of the court. The executor reserved exceptions to the rulings of the court in refusing to allow him these credits, and he now assigns them as error.

Jno. W. Ramsey, for the appellant.

A. J. WALKER, C. J.—An executor fills "a fiduciary relation, which is indispensable in our judicial system ; and, in the absence of bad faith, the law does not visit *him* with severer intendments than are indulged against agents generally."—*Henderson v. Simmons*, 33 Ala. 291. An executor who institutes a suit in good faith, and on reasonable grounds, is entitled to reimbursement of the costs and expenses of the litigation, notwithstanding his failure of success ; provided there does not appear to have been a want of proper diligence.—*Taylor v. Kilgore*, 33 Ala. 214 ; *Pearson v. Darrington*, 32 Ala. 261. Upon this principle, the appellant should have been allowed the costs and expenses incurred in the suit of detinue brought by him against Mary T. Sims. The negro which was the subject of litigation, had been bought and paid for by the appellant's testator, and remained in his possession, without any established intermission, until his death, and was spoken of and treated by him

as his property. When preparing his will, the testator was urged by his wife, (the party contesting the appellant's account,) to bequeath the negro girl to his daughter, Mary T. Sims, who afterwards claimed her, and was the defendant in the detinue suit brought by the appellant. The testator not only declined to comply with the request, but resisted and replied to the arguments made in support of it. After the testator's death, Mary T. Sims declared that she had prevailed upon her mother (the contestant as above stated) to permit the appellant to sell the negro, for the purpose of procuring the money necessary to discharge the debts of the estate, and thus avoiding the necessity for the sale of the land. These facts, and some others of no great importance, were known to the executor. There was no fact opposed to these, which we are authorized by the evidence to conclude was known to the executor, or ascertainable by the use of reasonable diligence, except that the testator in his life-time repeatedly declared to the effect that he had given the negro to his daughter, Mary T., who lived with him, and had said that the gift was made in Georgia, whence he emigrated to this State ; and had on one occasion placed his refusal to bequeath the negro to his daughter upon the ground that a gift had already been made to her. No direct evidence of any written conveyance by the father to his daughter, or of any delivery, appears to have been made, or to have been attainable. After giving a fair statement of the facts to an attorney, the executor was advised to bring the suit. Upon these facts, we can not say that the executor had not reasonable ground for bringing the suit, or that he acted in bad faith, or that he was guilty of negligence. We therefore decide, that the court erred in not crediting the executor with the amount of costs and expenses, including his counsel fees.

There seems to have been included among the credits claimed for expenses incurred in this suit, an item for extraordinary services. We can not ascertain from the bill of exceptions what those services were, or what proof was made in reference to them. Therefore, we can not decide whether or not this item of credit claimed ought to have been allowed.

[2.] The court refused to allow a credit for costs and expenses incurred, in a suit brought before a justice of the peace, to recover a balance of $6 55 on a note payable to the testator. The executor was unsuccessful in the suit. The note itself afforded reasonable ground for the belief, that a debt was due ; and there does not appear to have been any bad faith, or want of diligence. The executor ought, therefore, to have been reimbursed with the amount of costs paid by him in this case. We can not say the same thing in reference to the attorney's fee of ten dollars paid by him in the same case. The attorney, who seems to have ridden ten miles to attend the justice's court, undoubtedly made a correct and reasonable charge against the executor; but we can find no justification for the employment of a lawyer, at a cost of ten dollars, to attend to a suit, where the amount in controversy was $6 55. Extraordinary cases might arise, where the amount of costs involved without fault of the executor, or the importance of the principle as affecting other cases, was such as to justify the employment of counsel at an expense exceeding the sum in controversy; but this is not a case of that sort.

[3.] The executor was not entitled to the credit of four dollars for attending two days to the case before the justice of the peace. The ordinary attendance to a pending case in favor of an executor does not belong to the class of extraordinary services, which the statute permits to be specially compensated.—*Newberry v. Newberry*, 28 Ala. 690.

[4.] The statement of the account on the previous annual settlement was only *prima-facie* correct. As to those items which are in this opinion rejected, but which were allowed on the previous settlement, we consider the proof such as to justify a reversal of the former order.

If there are any questions presented by the record, which we have not noticed, the principles which we have announced will probably be a sufficient guide to the probate judge in determining them.

Reversed and remanded.