RICHARDSON et ux, Appellants v. OWEN et al.,
Respondents.
No. 8597
Submitted October 26, 1945. Decided Jan. 22, 1946.
165 Pac. (2d) 300

Messrs. Swanberg & Swanberg, of Great Falls, for appellant.
Mr. D. W. Doyle of Conrad, for respondents.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

Plaintiffs appeal from an adverse decree in their suit for reformation of a real estate conveyance. Their complaint alleges the execution of a contract in 1929 for the purchase from defendants of full title to certain land for $3,000 payable in nine installments over a period of years, with interest and taxes; the completion of payment on May 25, 1934, and the execution by defendant Owen and the recording by defendants of a deed of the land to plaintiffs, but with a reservation of 6¼% of all oil, gas and minerals that might be produced and saved from the premises. It alleges further that the mineral reservation was made through the mutual mistake of the parties or by the mistake of plaintiffs and the fraud of defendants; that since its recording the deed has been in the custody of the Federal Land Bank of Spokane and that plaintiffs did not discover the mineral reservation until August 27, 1942. Suit was filed in

October 1943. In a second cause of action plaintiffs allege full title to the land and seek a decree quieting their title.

The answer admits the execution of the contract and of the deed but denies the other allegations of the complaint. It sets up the affirmative defense that plaintiffs' cause of action is barred by subdivision 4, section 9033, Revised Codes, which places a two-year limitation upon actions for relief on the ground of fraud or mistake, the cause of action to accrue only upon discovery. The trial court found that the plaintiffs had failed to sustain the allegations of their complaint and rendered judgment accordingly without reference to the affirmative defense of the statute of limitations.

The evidence is that upon the making of the contract for purchase the plaintiffs went into possession of the land, which adjoined their ranch, but that the only payments made in accordance with the contract were the initial payment of $100 and a like payment which became due on November 1, 1929; that in 1933 they sought from the Federal Land Bank of Spokane a loan sufficient to liquidate that and other debts; that in order to bring their obligations within the amount loanable to plaintiffs upon the security of their property, a representative of the Federal Land Bank negotiated with plaintiffs' creditors including defendants; that meantime in 1932, in the belief that plaintiffs would not complete the purchase but without canceling the contract for their default, defendant Owen executed to the Midwest Refining Company a gas and oil lease reserving the usual landowner's royalty of 12½% of oil and gas produced, saved and marketed and providing for $100 annual delay rentals in default of drilling; that on May 25, 1934, plaintiffs were still indebted to defendants in the sum of $2,800 principal, with interest and taxes, all aggregating about $3,500 after allowing for the default rentals collected by defendants under the lease. The final agreement was that the defendants would reduce the balance to $1,200 in cash but would reserve in the conveyance a 6¼% interest in all oil, gas and minerals to be produced from the land; accordingly the loan was made by the Federal Land

Bank, the $1,200 was paid to defendants, and the deed was executed and delivered to the local representative of the Federal Land Bank for plaintiffs. It does not appear that plaintiffs saw the deed before it was sent to the bank at Spokane but it was recorded in the county recorder's office on February 21, 1935, and the plaintiffs testified that they had assumed that it was of record.

On July 11, 1935, the plaintiffs signed and acknowledged two agreements with defendants relating to the oil and gas lease given in 1932. The first ratified that lease and waived any claim for breach of the warranty in the deed on account of the lease. The second agreement recited the execution of the lease and of the deed from defendant Owen to plaintiffs, expressly mentioning the oil and gas reservation, and agreed that the plaintiffs should receive all delay rentals under the lease and that all royalties should be divided equally between the plaintiffs and the defendant Owen. The reference to the deed in the second agreement is as follows: ''Whereas, on the 25th day of May, 1934, said Lucile E. Owen did execute and deliver to Locke F. Richardson and Frances V. Richardson a certain warranty deed, conveying the above described land, excepting and reserving unto herself, her heirs and assigns, six and one-fourth per cent (6¼%) of all oil, gas and minerals that may be produced and saved from the said premises, said deed being of record in Book 14 of Deeds at Page 529 of the records of Pondera County, Montana, * * *.''

In spite of the above unequivocal reference to the mineral reservation contained in the deed, one of the plaintiffs, a former school teacher, testified that she did not know that the deed contained the mineral reservation and thought that the documents meant that the defendants should share in oil royalties only under the 1932 lease but not that the defendants had a mineral interest in the land itself or the right to share in royalties under subsequent leases. She insisted that it meant nothing further ''inasmuch as I signed it in regard to that one lease.'' Asked about the paragraph quoted above, she said: ''Well, there is a

lot of that that is just legal words to me. I didn't get the gist of that; that was all in regard to that one lease, as far as that was concerned, that was the paper in regard to that lease.''

Both plaintiffs testified that they never authorized nor agreed to accept the deed with the mineral reservation and knew nothing of it until August, 1942; that in spite of the clear wording of the 1935 documents they thought that after the termination of the 1932 lease they would receive all of the landowner's oil royalties and that they signed the documents with that understanding. Mr. Richardson testified that he did not read the papers before signing them and that he did not remember whether his wife told him what the papers provided. The latter testified: ''I cannot say that I have always been careful about legal papers, I have been very careless about legal papers because I always trusted anybody that I had to deal with and let them take care of it.'' There is no contention that they were unable to read or that they were prevented or dissuaded from reading the agreements before signing, but only that they understood from one Barkuloo, who presented the documents to them for signature, that any royalties under subsequent leases would belong entirely to them. They stated also that he threatened that unless they signed the documents the sale of the land to them would not be completed, although the deed had been given more than a year before and subsequently recorded and one of the documents so stated in unequivocal terms. Barkuloo denied making any such representations or threats and stated only that the oil company had prepared the documents and requested the Federal Land Bank to have them signed in order to obviate any question of the validity of the lease or of the division of royalties, and that the defendants had nothing to do with them.

Thus there is clear evidence that the original contract for full title to the land was superseded by a new oral agreement, subsequently performed, for the conveyance of the land for little more than one-third of the balance due under the original contract, but with the reservation of one-half of the usual landowner's royalty interest; that the deed was recorded on Feb-

ruary 21, 1935, as the plaintiffs assumed if they did not actually know before signing the further agreements of July 11, 1935, and that its contents were available to them; and that in one of the agreements then made, the plaintiffs expressly agreed that the deed had been given them subject to the mineral reservation in question.

In view of the above evidence, most of which was uncontroverted or was furnished by disinterested witnesses, and in view of the reasonableness of the mineral reservation in view of the reduction of the unpaid balance from $3,500 to $1,200, the absence of any other reasonable explanation for the reduction, and the fact that but for the reservation in the deed there would have been no reason why the defendants should have been allowed to share in the royalties, even under the 1932 lease, which plaintiffs have not questioned, it is clear that the trial court cannot be held in error for concluding that the plaintiffs had failed to sustain the allegations of their complaint and in awarding defendants judgment accordingly.

The judgment is therefore affirmed.

Associate Justices Morris, Adair, Angstman and Cheadle concur.